United States District Court
Southern District of Texas
**ENTERED**
July 02, 2025
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:24-cv-78

POWER CONTRACTING, LLC, *PLAINTIFF*,

v.

DAVID THURMAN, *DEFENDANT*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Both parties, Power Contracting, LLC, and David Thurman, have moved for partial summary judgment on Thurman's amended counterclaims. Dkts. 166, 170. And Power has objected to and moved to strike one of Thurman's summary-judgment exhibits. Dkt. 178. The court will (1) grant Thurman's motion in part, deny it in part, and reserve judgment in part, Dkt. 166; (2) grant Power's motion for summary judgment in part, deny it in part, and reserve judgment in part, Dkt. 170; and (3) deny Power's motion to strike, Dkt. 178.

## I.    Background

This lawsuit arises from Thurman's January 2024 departure from his position as Power's vice president. Dkt. 37 ¶¶ 1. Power alleges that Thurman has utilized confidential information in his role at competitor North Houston Pole Line ("NHPL") and recruited a fellow executive to join him, breaching his fiduciary duty. *Id.* ¶¶ 19, 21. Power also alleges that Thurman breached covenants in his employment agreement—which the court found do not apply to Power, Dkts. 33, 71, 143—and asks the court to reform the agreement to apply those covenants to Power. Dkt. 37 ¶¶ 19, 133–149.

When Power's interrogatory responses expanded the scope of its breach-of-fiduciary-duty damages, Thurman requested contractual indemnity pursuant to his employment agreement, which Power denied. Dkts. 166-4 at 11–13; 166-6–7; 166-9–11. Power then amended its interrogatory responses to remove those damages, but Power did not unequivocally disclaim them and indicated in a deposition it still sought those damages. Dkts. 166-5; 166-7; 166-8 at 63:14–64:3, 65:7–24, 66:9–22, 68:13–69:1. Power eventually disclaimed them, but not for another three months. Dkts. 134 at 28; 160 ¶¶ 17–19 and at 20–21.

Thurman filed counterclaims seeking indemnity under his employment agreement and declaratory relief. Dkt. 80. After Power

produced its operating agreement, Thurman added counterclaims for indemnity and advancement under it. Dkts. 100, 166-9. Thurman sought an emergency preliminary injunction on the advancement issue, which the court denied. Dkts. 93, 156. The court also denied Power's motion to dismiss Thurman's counterclaims, Dkt. 158, but granted Power leave to file a supplemental claim for opposing declaratory relief, which it did. Dkt. 160. The parties have filed multiple cross-motions for summary judgment. Dkts. 121, 166, 168, 170.

In this memorandum opinion, the court considers Thurman's motion for partial summary judgment on his amended counterclaims, Dkt. 166, Power's motion for summary judgment on its amended supplemental claim for declaratory judgment and Thurman's amended counterclaims, Dkt. 170, and Power's objections and motion to strike, Dkt. 178. But the court cabins its ruling to the discrete issue of advancement:

- Thurman's counterclaim for breach of the operating agreement regarding advancement, Dkts. 166 at 35; 170 at 6; *see* Dkt. 100 ¶¶ 54–58 (count II);

- Thurman's counterclaim for advancement, Dkts. 166 at 35; 170 at 6; *see* Dkt. 100 ¶¶ 71–76 (count V);

- Thurman's counterclaim for declaratory relief regarding advancement, Dkt. 166 at 35; 170 at 6; *see* Dkt. 100 ¶¶ 77–81 (count VI); and

- Power's supplemental claim for declaratory relief, relating only to advancement, Dkt. 166 at 6; *see* Dkt. 160 ¶¶ 61–66 (count six).

The court will address the remaining issues in a future opinion. *See* Dkts. 166 at 35; 170 at 6.

## II.   Legal Standards

### A. Motion to Strike

A party asserting a fact for Rule 56 purposes must provide support by "citing to particular parts of materials in the record," including "documents." Fed. R. Civ. P. 56(c)(1)(A). Parties may object that those materials "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Evidence in support of a Rule 56 motion "need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)).

### B. Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hou. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). For each cause of action moved on, the movant must set forth those elements for which it contends no genuine dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden

then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). The court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Hou. Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## III. Analysis

As a threshold matter, the court begins with Power's motion to strike. Dkt. 178. The court will then turn to the claims for advancement and breach of the operating agreement. Dkts. 166, 170.

## A. Motion to Strike

Power objects to and moves to strike from the summary-judgment evidence Thurman's conditional fee agreement with NHPL. Dkts. 166-4; 178 at 1–2 (arguing Thurman manufactured the conditional fee agreement to create standing and "has not—and cannot—authenticate [it]"). Thurman must convince the court only that he is "*capable* of" presenting the fee agreement in an admissible form at trial. *LSR Consulting, LLC*, 835 F.3d at 534. And so he has; the declaration attached to his response satisfies Fed. R. Evid. 901. Dkt. 191-1; *see* Dkt. 191 at 3; *United States v. Ceballos*, 789 F.3d 607, 617–18 (5th Cir. 2015) (describing the authenticity burden for admissibility as "low").

Accordingly, Power's objection is overruled, and its motion to strike is denied. Dkt. 178.

## B. Summary Judgment

Thurman argues that Power's operating agreement entitles him to advancement because the agreement indemnifies him for Power's claims against him. Dkt. 166 at 17–22. And, because Power has allegedly refused to honor its contractual obligations, Thurman asserts Power has breached its operating agreement, to which he is a third-party beneficiary. *Id.* Power addresses Thurman's arguments in both its response to his motion for

summary judgment and in its own cross-motion for summary judgment. Dkts. 170, 176. In addition, Power argues Thurman does not have standing to seek advancement. Dkt. 170 at 34. Both parties seek declaratory relief. Dkts. 166 at 17; 170 at 18. The court will address standing first and then turn to the merits.

### 1. Standing

First, Power reasserts an argument already rejected by this court—that Thurman has paid no legal fees and, therefore, has no injury. Dkts. 156 at 1–3 (finding standing for already-paid, pending, and future expenses); 170 at 34. The court's reasoning stands.

Second, Power never explains its allegation that Thurman's allegedly "concocted" conditional fee agreement with NHPL falsely "manufacture[s] standing." Dkts. 170 at 34; 178 at 2–5. Because "[a]dvancement provides [Thurman] with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings," Power's denial of advancement alone creates the injury. *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (requiring a concrete, particularized injury to establish standing).

Accordingly, Thurman has standing to seek advancement.

## 2. Advancement

Power's operating agreement governs advancement.[1] Dkt. 166-2. North Carolina law governs the operating agreement. *Id.* § 5.1. But because North Carolina law lacks developed precedent on advancement—as do most jurisdictions—its courts look to Delaware law. *Wheeler v. Wheeler*, No. 17 CVS 16248, 2018 WL 6133510, at *9 (N.C. Super. Ct. Nov. 15, 2018) (noting "case law on indemnification, advancement, and the relationship between the two is underdeveloped in North Carolina," and "North Carolina courts frequently look to Delaware law for guidance"); *see, e.g.*, *Int'l Airport Centers, L.L.C. v. Citrin*, 455 F.3d 749, 752 (7th Cir. 2006) (describing advancement as a "Delaware specialty"). This court will do the same.

To determine the parties' intention, the court begins with the agreement's plain language, giving words their ordinary meaning and interpreting the agreement as written when the language is clear. *State v. Philip Morris USA Inc.*, 363 N.C. 623, 631–32 (2009). The contract is read

---

[1] Thurman's previous position that his employment agreement governed this dispute does not quasi-estop him from now asserting that Power's operating agreement governs. *See* Dkt. 170 at 32–34. Quasi-estoppel "prevent[s] a party from retaining a benefit by asserting a position to the disadvantage of another and then asserting a right which is inconsistent with that previous position." *Gil Ramirez Grp., L.L.C. v. Hou. Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015) (citation omitted). But Power fails to identify any benefit conferred on Thurman or disadvantage inflicted on it, and the court does not punish evolving legal theories as discovery proceeds. *Id.*; Dkt. 174 at 32–33.

as a whole and shall be construed to bring clauses into harmony. *Id.* at 631–33. That means applying a "reasonable meaning to all provisions" that avoids leaving any "useless or superfluous." *S. Seeding Serv., Inc. v. W.C. English, Inc.*, 719 S.E.2d 211, 215 (2011) (citation omitted).

Generally, advancement is a right distinct from indemnity, and the court need not consider indemnity's merits to decide advancement. *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1046 (Del. Ch. 2014) ("Advancement and indemnification, although obviously related, are distinct types of legal rights and the right to advancement is not ordinarily dependent upon a determination that the party in question will ultimately be entitled to be indemnified." (citation modified)). The operating agreement is no exception. *But see* Dkt. 176 at 8–10 (arguing that indemnity must be decided first). Section 2.7(f) provides the advancement language:

> [E]xpenses (including attorneys' fees) actually and reasonably incurred by a current or former Manager or officer in defending any civil, criminal, administrative or investigative action, suit or proceeding with respect to which indemnification may be provided under Section 2.7(a) or Section 2.7(b) above shall be paid by the Company in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such Manager or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the Company as authorized in this Section 2.7.

Dkt. 166-2 § 2.7(f). By using "may," the provision requires only that Thurman *could be* eligible for indemnification but not that he *is* eligible. Dkt. 166-2

§ 2.7(f); *see May,* WEBSTER'S NEW INTERNATIONAL DICTIONARY 1113 (2d ed. 1934) ("might" or "possibility or likelihood"). To answer the advancement question, the court need not first decide the merits of indemnification.

Of the requirements listed in section 2.7(f), the parties dispute only whether indemnification "may be provided" to Thurman under sections 2.7(a) or (b) and whether section 2.7(k) precludes advancement. Dkts. 166 at 18–21, 23–29; 170 at 19–31. Resolution of these disputes determines whether Power "shall" advance Thurman's actual and reasonable expenses. Dkt. 166-2 § 2.7(f).

Power initiated this suit, Dkt. 1; therefore, section 2.7(b) determines whether Thurman "may be provided" indemnity:

> Subject to Section 2.7(c) and Section 2.7(k), the Company shall indemnify any person who serves or has served as a Manager or officer of the Company and who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Company to procure a judgment in its favor by reason of the fact that such person is or was such a Manager or officer, or is or was an employee or agent of the Company, or is or was serving at the request of the Company as a Manager, officer, employee or agent of another limited liability company, corporation partnership, joint venture, trust, employee benefit plan or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection with the defense or settlement of such action or suit if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Company . . . .

Dkt. 166-2 § 2.7(b). Here, the parties dispute multiple points.

First, whether this suit arises "by reason of the fact" Thurman served as Power's vice president. Dkts. 166 at 19–20; 176 at 8–9, 15–18. Under the Delaware standard, this phrase means "if there is a nexus or causal connection between any of the underlying proceedings and one's official corporate capacity, those proceedings are 'by reason of the fact' that one was a corporate officer, without regard to one's motivation for engaging in that conduct." *Pontone*, 100 A.3d at 1050 (citation modified) (quoting *Homestore, Inc.*, 888 A.2d at 214). Delaware courts interpret this phrase "broadly in favor of indemnification and advancement." *Id.* (citation omitted).

Power's claim for breach of fiduciary duty satisfies the standard.[2] Dkt. 37 ¶ 151; *see Pontone*, 100 A.3d at 1051–53 (finding express claim for breach of fiduciary duty and inference of same satisfies this standard). Power alleges Thurman "disclos[ed] confidential information" and "assist[ed] in the solicitation of a Power Contracting employee." Dkt. 37 ¶ 152. These allegations require use of the "corporate powers" and satisfy the "nexus"

---

[2] Because section 2.7(b) requires indemnification for "action[s] or suit[s]" initiated by Power "by reason of the fact" of Thurman's position, the court does not need to analyze each claim here. Dkt. 166-2 § 2.7(b). A single claim within the proceeding is sufficient; therefore, it does not matter if the reformation claim satisfies this standard to determine whether indemnity "may be provided." *Id.* § 2.7(f).

requirement. *See Pontone*, 100 A.3d at 1051–53 (finding allegations of misappropriation of confidential information and employee recruitment were "by reason of the fact"); *NAMS Holdings, LLC v. Reece*, No. 17 CVS 12288, 2018 WL 1830504, at*4 (N.C. Super. Apr. 16, 2018) (quoting *Paolini v. Mace Sec. Int'l., Inc.*, 985 A.2d 392, 406 (Del. Ch. 2009) ("[T]he corporate powers must be useful or necessary for the commission of the alleged conduct," such as "using inside information which he possessed by virtue of his corporate status." (citation modified)). Therefore, there is no dispute Power initiated this suit "by reason of the fact" Thurman served as vice president.

Second, whether section 2.7(b)'s "good faith" language precludes indemnity. Dkts. 166 at 27–29; 166-2 § 2.7(b); 170 at 29–31; 176 at 18–21. Under this section, Power shall indemnify a person only "if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Company . . . ." Dkt. 166-2 § 2.7(b). This determination resides with the court. *See id.* § 2.7(e). Because the court cannot determine "good faith" without considering the merits, the term "if" does the heavy lifting here much as "may" does in section 2.7(f). *Id.* § 2.7(b), (f). Thurman's good faith remains a future inquiry and does not affect whether Thurman "may be provided" indemnity at this point. *Id.* § 2.7(f).

Third, whether section 2.7(k) excludes Thurman's advancement claims.[3] Dkt. 166 at 23–27; 170 at 20–27; 176 at 8–15. The dispute lies in subsections 2.7(k)(i) and (ii):

> [T]he Company shall not be obligated under this Section 2.7 to indemnify, or advance expenses to, any person in connection with (i) a proceeding (or part thereof) initiated by such person unless such proceeding (or part thereof) was authorized by the Board of Managers, or (ii) proceedings or claims involving the enforcement of any employment, severance, non-competition, compensation, or other plan or agreement with or of the Company or any of its affiliates to which such person may be a party, or of which such person may be a beneficiary . . . .

Dkt. 166-2 § 2.7(k).

Subsection 2.7(k)(i) does not apply because Thurman has not initiated this proceeding nor do his counterclaims constitute initiating "part thereof." *Id.* § 2.7(k)(i). Therefore, he did not need authorization to file his counterclaims. *Id.* Power contends that because a "part" is "something less than a whole," and because counterclaims are independent actions brought by the defendant and considered concurrently for judicial efficiency, bringing one constitutes initiating "a part" of the proceeding. Dkt. 176 at 12–13. The court rejects this construction.

---

[3] The court previously rejected Power's same arguments when the court denied Power's motion to dismiss. Dkt. 158 at 2–3. Although the court continues to find these arguments unconvincing, it provides a more thorough analysis here.

A proceeding initiates once, not in stages. Webster's Second defines a "proceeding" as a "legal action." *Proceeding,* WEBSTER'S NEW INTERNATIONAL DICTIONARY 1434 (2d ed. 1934). "Initiate" means "to do the first act." *Initiate,* WEBSTER'S NEW INTERNATIONAL DICTIONARY 943 (2d ed. 1934). Thus, to "initiate a proceeding" is to do the first act in a legal action. The first act in a civil legal action is filing the complaint. Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.). Applying this construction, initiating "a part" of a proceeding could only mean initiating an independent proceeding overlapping the first *that could exist on its own*, like offensive third-party claims or permissive counterclaims. *Cf. Sun-Times Media Grp., Inc. v. Black*, 954 A.2d 380, 407 (Del. Ch. 2008) (finding that "part thereof" restrictions limit only "part proceedings" like offensive permissive counterclaims or third-party claims). This is the primary difference with Power's asserted construction—that *every* counterclaim "is part of a proceeding that is initiated by a defendant."[4] Dkt. 176 at 13.

---

[4] Even were Power's construction of "part thereof" correct, because "ambiguities in advancement provisions generally are construed against the [party] who drafted them," and this phrase is susceptible to two meanings, the court would construe it against Power. *Paolino v. Mace Sec. Intern., Inc.*, 985 A.2d 392, 402 (Del. Ch. 2009); *Novacare Orthotics & Prosthetics E., Inc. v. Speelman*, 528 S.E.2d 918, 922 (N.C. Ct. App. 2000).

Thurman's counterclaims are defensive and compulsory and fall outside subsection 2.7(k)(i)'s limitation. His counterclaims "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim" because he asserts them specifically to defend against Power's affirmative claims. Fed. R. Civ. P. 13(a). Moreover, because he cannot seek advancement after the conclusion of this litigation, his counterclaim for advancement arises from and must be brought during the pendency of the action, making it, and subsequently any indemnity on which it is premised, compulsory. *Id.* Therefore, compulsory counterclaims, like Thurman's counterclaims for advancement and indemnity, are not independent actions to which subsection 2.7(k)(i)'s limits apply.[5]

---

[5] This reasoning aligns with Delaware law. Delaware courts apply the *Roven* test to determine whether counterclaims are asserted "in defending against the affirmative claims" made against the party. *Pontone v. Milso Indus. Corp.*, No. CIV.A. 7615-VCP, 2014 WL 2439973, at *3 (Del. Ch. May 29, 2014) (cleaned up) (applying *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992) to evaluate whether counterclaims were advanceable). The *Roven* test asks whether counterclaims are (1) "necessarily part of the same dispute" as the affirmative claims and (2) "advanced to defeat, or offset," those claims. *Roven*, 603 A.2d at 824. Generally, this forbids advancement or indemnity for permissive counterclaims and third-party claims because they are not asserted "in defending against the affirmative claims." *Pontone*, 2014 WL 2439973, at *3 (cleaned up) (applying *Roven*, 603 A.2d at 824). But—as with Thurman's counterclaims—when compulsory counterclaims (prong 1) are asserted to "defeat, or offset," the affirmative claims (prong 2), they are permitted. *Pontone*, 2014 WL 2439973, at *4–5. That is what Thurman does here.

In sum, Thurman did not initiate this suit; Power did. Dkt. 1. And, because Thurman's counterclaims are compulsory and asserted to defeat or otherwise offset Power's claims, they do not constitute initiating a "part thereof" the proceeding.[6]

This construction of subsection 2.7(k)(i) produces harmony. *See Philip Morris USA Inc.*, 363 N.C. at 633 (requiring harmonious construction). Power's construction provides itself veto power in suits initiated by it where advancement would normally be available to the defendant. This renders any promise of advancement or indemnity illusory and reference to it "useless or superfluous."[7] *S. Seeding Serv., Inc.*, 719 S.E.2d at 215. Consequently, Thurman did not need authorization to receive advancement.

Subsection 2.7(k)(ii) does not preclude Thurman's claim for advancement in its entirety. This limitation applies to "proceedings or claims

---

[6] Indeed, Delaware courts have found even a plaintiff's request for advancement and indemnity to defend against counterclaims asserted by a corporate defendant do not constitute a "part thereof" the proceeding although the plaintiff initiated the suit. *See, e.g.*, *Paolino*, 985 A.2d at, 402.

[7] Power's theory would also oppose Delaware policy that indemnity and advancement "promote the desirable end that corporate officials will resist what they consider unjustified suits and claims, secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated." *Pontone*, 2014 WL 2439973, at *5 n.26 (quoting *Stifel Fin. Corp. v. Cochran,* 809 A.2d 555, 561 (Del.2002) and citing *Reinhard & Kreinberg v. Dow Chem. Co.,* No. 3003-CC, 2008 WL 868108, at *3 (Del. Ch. Mar. 28, 2008)).

involving the enforcement" of employment agreements. Dkt. 166-2 § 2.7(k)(ii). Because the clause includes both "claims" and "proceedings," precluding advancement for an entire proceeding when only a single claim merits preclusion under section 2.7(k)(ii) would render "claims" superfluous. *Id.*; *S. Seeding Serv., Inc.*, 719 S.E.2d at 215. Instead, when a proceeding contains claims seeking to enforce employment agreements along with claims that do not, the limitation applies only to the enforcement claims. This, then, requires the court to examine each claim.

Of the three claims Power alleges, only reformation falls within the enforcement limitation. Thurman does not seek advancement for expenses defending against Power's twice-dismissed breach-of-contract claim, so the court need not analyze it.[8] And Power's claim for breach of fiduciary duty arises under the common law, not contract, so it does not fall within the limitation. *See, e.g.*, *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 702 (Tex. 2007) (referring to fiduciary duty as arising under the common law). This leaves only reformation.

---

[8] Because subsection 2.7(k)(ii) uses the present tense—"involving the enforcement" of certain agreements—and Power's suit no longer includes this claim, this limitation would not have applied. Dkt. 166-2 § 2.7(k)(ii). Moreover, allowing any filed claim to limit advancement incentivizes Power to *always* file a similarly nonviable breach-of-contract claim.

Reformation falls within subsection 2.7(k)(ii)'s limitation because it enforces an agreement after the court reforms it.[9] *Brinker v. Wobaco Trust Ltd.*, 610 S.W.2d 160, 166 (Tex. App.—Texarkana 1980, writ ref'd) ("Reformation does not change the agreement; it enforces the agreement. It orders a change in the drafted instrument so that it will correctly express what has been the real agreement from its inception."). The Texas Legislature has also recognized that reformation contains an enforcement function. *See Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 796 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (recognizing statutory damages limitation when a court reforms and subsequently enforces a non-compete); Tex. Bus. & Com. Code § 15.51(c) (limiting remedy to injunctive relief if court reforms and enforces non-compete). Power asks the court not only to reform Thurman's employment agreement but to enforce it as reformed. Dkt. 37 ¶ 149. Accordingly, because reformation enforces an agreement, subsection

---

[9] Although North Carolina law governs the operating agreement, Dkt. 166-2 § 5.1, because Texas law governs Thurman's employment agreement, Dkt. 166-1 § 8, and Power has asserted its reformation claim in a Texas federal court, the court looks to Texas law to evaluate whether a reformation claim falls within subsection 2.7(k)(ii)'s limitation. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 (5th Cir. 2012); *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008) (applying Restatement (Second) of Conflict of Laws § 187 (1971)).

2.7(k)(ii) limits Thurman's ability to receive advancement for expenses related to this claim.

Summarizing the above, there is no genuine dispute that the operating agreement entitles Thurman to advancement under section 2.7(f). The proceeding contains claims against him for which indemnity "may be provided" under section 2.7(b). But, of those claims, section 2.7(k)'s limitations preclude advancement for Power's reformation claim. Thus, Thurman is entitled to advancement only for the breach-of-fiduciary-duty claim.

Accordingly, Thurman's motion for summary judgment on his advancement counterclaim is granted in part and denied in part, Dkt. 166, and Power's motion for summary judgment on this counterclaim is denied in part and granted in part, Dkt. 170.

### 3. Breach of Operating Agreement

Thurman argues that Power breached its operating agreement, to which he is a third-party beneficiary, when Power denied him advancement and indemnity. Dkt. 166 at 21–22. Power does not address Thurman's breach-of-contract arguments. To show Power breached, Thurman must show "(1) [the] existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000). To

show he is a third-party beneficiary, Thurman must show "(1) that a contract exists between two persons or entities; (2) that the contract is valid and enforceable; and (3) that the contract was executed for the direct, and not incidental, benefit of the [party asserting beneficiary status]." *Jarman v. Twiddy & Co. of Duck, Inc.*, 889 S.E.2d 488, 495 (N.C. Ct. App. 2023).

Thurman is a third-party beneficiary. The parties do not dispute the operating agreement's existence or validity. *Id.* The operating agreement expressly benefits current and former officers such as Thurman. *Id.*; Dkt. 166-2 §§ 2.6. 2.7(b), 5.5.

Power breached the operating agreement regarding Thurman's status as a third-party beneficiary. As discussed above, Thurman is entitled to advancement. Power has failed to perform because it has denied Thurman's request for advancement. Dkts. 166-6–7, 9–11; *Poor*, 530 S.E.2d at 843. Therefore, Power has breached regarding advancement.

Accordingly, the court grants Thurman's motion for summary judgment as to his breach-of-the-operating-agreement counterclaim, Dkt. 166, and denies Power's motion concerning the same, Dkt. 170. Because the court does not address the merits of Thurman's counterclaim for indemnity here, it reserves whether Power breached the operating agreement when it denied Thurman's request for indemnity.

### C. Declaratory Relief

The court's grant of declaratory relief here extends only to the issue of Power's advancement obligations under the operating agreement. Dkts. 100 ¶¶ 77–81; 160; 166 at 17, 35; 170 at 6, 27. Because the court has found Thurman entitled to advancement under the operating agreement, he is also entitled to declaratory relief to that effect. Power is not.

Accordingly, Thurman's motion for summary judgment as to declaratory relief regarding Power's advancement obligations under the operating agreement is granted, Dkt. 166 at 35; Power's is denied, Dkt. 170 at 6.

### D. Advancement Procedure

The parties ask the court to order a procedure for disbursing advanced funds. Dkts. 166 at 33–34; 176 at 24–26. Power is right to request a reasonableness mechanism missing from Thurman's proposal because the operating agreement requires advancing "expenses (including attorneys' fees) actually and reasonably incurred . . . ." Dkts. 166-2 § 2.7(f); 176 at 24–25. When an agreement requires expenses to be reasonable, the entitled party must produce discovery limited to establishing that reasonableness. *Roven*, 603 A.2d at 825 (limiting discovery to "the quantum of the expenditure, including a specification of work performed" but not including

privileged information). But because there is not yet an entry of judgment or a prevailing party, the court need not adhere to Fed. R. Civ. P. 54(d) as Power requests. Dkt. 176 at 25.

Presumably, counsel for both parties should be able to work together in good faith to process advancement requests without the court's intervention. This is the court's **strong** preference. The parties must demonstrate to the court their diligent efforts at resolving their differences before the court will entertain requests to intervene. **Note:** During the advancement period, the court will not consider disputes arising from Power's concern regarding "Thurman's potential to receive a windfall in the form of double recovery." Dkt. 176 at 26. The court will entertain these disputes only at the conclusion of this litigation.

Accordingly, to ensure prompt payment for Thurman's already-incurred expenses, the parties are ordered to follow the below procedure:

- Within 10 days of this memorandum opinion and order, Thurman's counsel shall submit to Power's counsel via email a detailed invoice identifying the fees and expenses for which advancement is requested. The invoice shall provide for each time entry the date, timekeeper, billing rate, task description, time incurred, and amount charged. The invoice shall identify with detail for each expense the date of the charge, its nature, and the amount incurred. Thurman's counsel shall certify by signature: (1) personal review of the expenses; (2) each entry/expense falls within the scope of advancement as set forth above; and (3) each fee/expense's reasonableness.

- Within 10 days of receiving Thurman's counsel's email, Power shall pay, via wire payment to the trust account designated by Thurman's counsel, all undisputed expenses.

- Contemporaneous with the payment, Power's counsel shall submit to Thurman's counsel any objections, identifying each specific time entry or expense to which it objects, explaining the nature of the objection, and citing any legal authority supporting the objection. Any objection not included shall be waived.

- Within 5 days of Power's response, Thurman's counsel will respond to the objections and provide supporting information and authority.

- Within 7 days of Thurman's response, the parties shall meet ***in person*** and confer regarding the disputed amounts. Any resolved payments shall issue from Power within 3 days of that meeting.

- Only once the parties have performed the above may they bring any disputed expenses to the court. The parties shall file a ***joint*** letter outlining the disputed expenses, each side's position, and any authority supporting their position. At its discretion and not on any party's request, the court will schedule an in-person hearing to resolve the dispute.

- If the parties do not require the court's intervention, within 7 days of Power's final payment of already-incurred expenses, the parties shall submit a ***joint*** letter informing the court they have completed this process.

For Thurman's future expense requests, counsel for both parties shall fashion a monthly payment procedure. The court recommends the parties consult the procedure provided in *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 1003–04 (Del. Ch. 2012), as a model. The parties are ordered to meet and confer on that procedure and within 21 days of this memorandum opinion and order submit a ***joint*** letter informing the court of that procedure.

\*      \*      \*

For the foregoing reasons, the court grants summary judgment for:

- Thurman on his counterclaim for breach of the operating agreement regarding advancement (reserving breach of the operating agreement for indemnity);

- Thurman, in part, on his counterclaim for advancement (breach of fiduciary duty);

- Thurman, in part, on his counterclaim for declaratory relief regarding Power's advancement obligations under the operating agreement (reserving judgment on declaratory relief regarding indemnity under the operating agreement and Thurman's employment agreement); and

- Power, in part, on Thurman's counterclaim for advancement (reformation).

The court denies summary judgment for:

- Power, in part, for its supplemental claim for declaratory relief regarding Power's advancement obligations under the operating agreement (reserving judgment on declaratory relief regarding indemnity under the operating agreement and Thurman's employment agreement);

- Power on Thurman's counterclaim for breach of the operating agreement regarding advancement; and

- Thurman, in part, on his counterclaim for advancement (reformation).

The court reserves judgment on issues regarding:

- Thurman's counterclaim for indemnity, in general;

- Thurman's counterclaim for indemnity for the now-withdrawn performance-related damages;

- Both parties' claims for declaratory relief regarding indemnity; and

- The remainder of Thurman's counterclaims as challenged by Power.

Finally, the court will issue partial declaratory judgment separately.

Signed on Galveston Island this 2nd day of July, 2025.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE