United States District Court
Southern District of Texas
**ENTERED**
August 20, 2025
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:24-cv-78

POWER CONTRACTING, LLC, *PLAINTIFF*,

v.

DAVID THURMAN, *DEFENDANT*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court are plaintiff Power Contracting's and defendant David Thurman's opposing motions for summary judgment. Dkts. 121, 166, 168, 170. The court will deny Power's motion on its breach-of-fiduciary-duty claim, Dkt. 121, grant in part Thurman's motion on his counterclaims, Dkt. 166, grant Thurman's motion on Power's reformation and breach-of-fiduciary-duty claims, Dkt. 168, and grant in part and deny in part Power's motion on its declaratory-judgment claim and on Thurman's counterclaims, Dkt. 170. Resolving these motions, the court decides nearly all this case's claims.

## I.    Background

This lawsuit arises from Thurman's January 2024 departure from Power's employment. Dkt. 37 ¶ 1. Power sues Thurman for contract reformation and breach of fiduciary duty for allegedly disclosing confidential documents and soliciting a Power employee, and seeks declaratory relief. *Id.* ¶¶ 133–153; Dkt. 160 ¶¶ 61–66. Thurman countersues for advancement, indemnity, breach of contract, and declaratory relief. Dkt. 100 ¶¶ 49–81.

### A. Factual Background

Thurman began working for Power's predecessor, Mesa Line Services, in 2014 and signed an employment agreement with Mesa in 2017. Dkt. 37 ¶¶ 41, 46–49. Mesa was acquired and merged into Power in 2021. *Id.* ¶¶ 71–72. Thurman served as Power's vice president until his departure. *Id.* ¶ 24.

Both Thurman and Travis Golden, a senior project manager, area supervisor, and chief estimator, departed Power and joined North Houston Pole Line ("NHPL"), a direct competitor to Power and a subsidiary of Quanta Services. *Id.* ¶¶ 2, 22, 87–88, 98. In his communications with NHPL and Quanta, Thurman shared documents containing his compensation details and information related to Mesa's merger with Power. Dkt. 121-2 at 155:7–9, 158:18–21, 169:13–170:10, 178:10–16, 183:20–24, 202:1–11. Quanta's concerns with Thurman's employment agreement temporarily halted their

discussions. *Id.* at 161:12–164:3, 202:8–17. They resumed in August 2022 when Quanta executives, specifically Bo Cassidy, reached out to Thurman. *Id.* at 213:12; 121-18. Thurman accepted Quanta's job offer in December 2023. Dkt. 121-23, -24, -25.

Golden, originally a Mesa employee like Thurman, became frustrated following the merger after Power cut his vacation in half, maintained policies that made it difficult to competitively bid on large, complex projects—which damaged his relationships with existing clients—and effectively made it impossible to earn his performance-based bonus. Dkt. 168-1 at 37:1–39:3, 40:13–41:12, 98:8–25, 100:2–6. Adding to Golden's frustrations, Power also hired a new vice president of operations in December 2022—the position Thurman occupied—without consulting him or Thurman as promised. *Id.* at 45:10–25, 46:1–12, 49:21–50:4, 55:2–56:15, 58:3–21, 60:17–20, 61:4–62:7.

Soon after, Golden applied for an open position at Quanta. *Id.* at 62:13–63:18. Golden had history with Quanta; his father worked for a Quanta company for more than 30 years, and he had previously been offered a position to work at NHPL. *Id.* at 10:13–15, 20:24–21:3, 22:4–23:22. Golden maintained communications with Quanta, *id.* at 97:8–18, and eventually applied for another open position in March 2023. *Id.* at 63:23–64:5. Shortly after, Golden called Cassidy to discuss openings and interviewed with senior

Quanta executives. *Id.* at 72:1–6, 73:8–75:6; Dkt. 168-2 ¶¶ 4–7, 8. Cassidy facilitated Golden's hiring and was prepared to make him an offer by the end of 2023. Dkts. 168-1 at 89:13–91:15; 168-2 ¶¶ 12–14, 18, 20–23. Golden finally received his offer on January 4, 2024. Both Thurman and Golden officially resigned from Power one week later. Dkts. 121-31 at 95:5–14; 121-35 at 83:21–23.

### B. Procedural History

Power sued Thurman, alleging he breached restrictive covenants in his employment agreement and his fiduciary duty to the company. Dkt. 1, 19. Power also sought reformation of Thurman's employment agreement and declaratory relief. *Id.* The court denied Power's request for a temporary restraining order. Dkt. 9. The court also granted in part and denied in part Thurman's first motion to dismiss, Dkt. 21, finding the restrictive covenants at the center of Power's breach-of-contract claim did not protect it. Dkt. 33. Power amended the dismissed claim, Dkt. 37, which the court dismissed for the same reason. Dkt. 71.

After Power served Thurman a response to interrogatories which expanded the scope of damages it sought for its breach-of-fiduciary-duty claim, Thurman filed counterclaims for indemnity under his employment agreement, breach of contract due to Power's denial of his request for

indemnity, and declaratory relief. Dkt. 80. Thurman later added counterclaims for advancement and indemnity under Power's operating agreement and breach of the same. Dkt. 100. The court granted Power leave to file a supplemental claim for declaratory relief as to its rights under the operating agreement. Dkt. 160.

Thurman moved to preliminarily enjoin Power, asking the court to order Power to advance his defense expenses as provided under Power's operating agreement. Dkt. 93. The court denied the relief, finding a lack of irreparable harm and that the advancement issue would be better resolved on summary judgment. Dkt. 156.

The parties have filed multiple cross-motions for summary judgment. Dkts. 121, 166, 168, 170. Power has moved on its claim for breach of fiduciary duty, its supplemental claim for declaratory relief, and Thurman's counterclaims for indemnity and advancement. Dkts. 121, 170. Thurman has moved on his counterclaims for advancement and breach of the operating agreement, Power's claims for reformation and breach of fiduciary duty, and for partial summary judgment for indemnity on a portion of expenses defending against Power's now-withdrawn performance-related allegations. Dkts. 166, 168.

The court has addressed the issues of advancement, breach of Power's operating agreement in part, and declaratory relief regarding the same. Dkt. 199. It turns to the remaining issues now.

## II.    Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court views "each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Century Sur. Co. v. Colgate Operating, L.L.C.*, 116 F.4th 345, 349 (5th Cir. 2024). For each cause of action moved on, the movant must set forth those elements for which it contends no genuine dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). The court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Hous. Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## III.  Analysis

The court sits in diversity. As it therefore applies the substantive law of the state in which it sits, *Hanna v. Plumer*, 380 U.S. 460, 465 (1965), the court applies Texas law to the reformation and breach-of-fiduciary-duty claims.

### A. Reformation

Thurman has moved for summary judgment on Power's reformation claim. Dkt. 168 at 21–27. Because Power has not put forth evidence creating a factual dispute, summary judgment for Thurman is proper.

The court has twice dismissed Power's claims for breach of contract in which it argued Thurman violated restrictive covenants. Dkts. 33, 71. The

court found that Power could not enforce those covenants' protections against Thurman because the employment agreement's plain language defined a discrete body of companies to which the covenants applied—and which did not include Power. Dkts. 33 at 3–10; 71 at 4–7.

Power's claim in the alternative for contract reformation survived. Dkt. 33 at 11–12. Power contends the parties to Thurman's employment agreement—Mesa and Thurman—intended for Power to be included in the agreement's reference to discrete companies—"the 'Company Group.'" Dkt. 37 ¶¶ 133–49; *see* 37-1 ¶ 3.4 (defining "the 'Company Group'"). If reformed, Power could then enforce the restrictive covenants against Thurman. *Id.* ¶ 132.

But reformation is not appropriate here. A reformation claim requires two elements: "(1) an original agreement and (2) a mutual mistake that occurred when reducing this agreement to writing." *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 408 (5th Cir. 2012) (citing *Cherokee Water Co. v. Forderhause,* 741 S.W.2d 377, 379 (Tex. 1987)). The party seeking reformation must prove mutual mistake by "clear and convincing evidence." *GeoSouthern Energy Corp. v. Chesapeake Operating Inc.*, 274 F.3d 1017, 1021 (5th Cir. 2001) (citing *Oldaker v. Traveler's Ins. Co.*, 497 S.W.2d 402, 404 (Tex. App.—El Paso 1973, no writ)). In response to

Thurman's motion for summary judgment on this issue, Power fails to raise material evidence supporting a genuine dispute on either element.

The summary-judgment record demonstrates Thurman's employment agreement is the "original agreement." *See Tech. Automation Servs. Corp.*, 673 F.3d at 408. Thurman testified in his deposition that he had no prior agreement with Mesa before the drafting of his employment agreement. Dkt. 168-3 at 333:16–20. Nor did anyone tell Thurman the terms meant something different than what its plain language sets forth. *Id.* at 333:21–24. Nor was there any discussion of the term "company group," any other defined term, the restrictive covenants, or what would happen to the restrictive covenants following dissolution of the "company group." *Id.* at 333:25–334:25. David Hiatt, Power's president and corporate representative, testified similarly: when asked if Power is aware of any "original agreement" preexisting the one contained in the written employment agreement, Hiatt answered, "No." Dkt. 168-4 at 105:22–106:2.

Power also provides no evidence a mistake occurred "when reducing [the employment] agreement to writing." *Tech. Automation Servs. Corp.*, 673 F.3d at 408. Indeed, Hiatt stated that Power was "[n]ot aware of any mistakes" made in the employment agreement that failed to reflect the terms agreed to by the parties. Dkt. 168-4 at 107:3–8. Thurman's deposition

testimony demonstrates the same. Dkt. 168-3 at 336:18–22 (answering "No" when asked if he was aware of any mutual mistake contained in the employment agreement).

Despite the lack of clear and convincing contemporaneous evidence creating a factual dispute as to the required elements, Power argues later evidence of the parties' intention demonstrates mutual mistake. Dkt. 180 at 26–27. True or not, the evidence to which Power points is unconvincing. Hiatt testified to Power's belief that the restrictive covenants remain in force against Thurman. Dkt. 180-1 at 141:3–14. And Michael Giarratano, Mesa's former president and CEO, stated in his declaration that Mesa intended and believed the restrictive covenants would remain in force against Thurman regardless. Dkt. 180-9 ¶ 9. But neither have personal knowledge of the employment agreement's formation or drafting. Dkts. 168-4 at 97:2–6 (acknowledging Power had no role in "negotiating, drafting, or executing" the Mesa agreement); 180-9 ¶ 2 (stating that Giarratano did not join Mesa until two years after Thurman signed his employment agreement); *see* Fed. R. Evid. 602 (admitting evidence only upon "a finding that the witness has personal knowledge of the matter"). Therefore, their statements do not create any factual dispute.

Power also argues that post-agreement conduct can prove the parties' pre-agreement intentions, thereby exposing mutual mistake. Dkt. 180 at 22–25. But the caselaw Power cites neither supports this proposition in the context of reformation nor explains how those cases could be applied in that context.[1] *Id.* at 22.

Moreover, even if post-agreement conduct could evince mutual mistake, the summary-judgment record fails to establish that. Power relies heavily on Thurman's verification of a state-court petition. Dkt. 37 ¶¶ 145–46. But because Thurman verified only "the facts in the pleading" and not any legal conclusions, his verification does not show his belief that the restrictive covenants in his employment agreement remained in effect. Dkt. 37-9 at 19–20. In so verifying, Thurman acted in his capacity as Mesa's CEO,

---

[1] Power cites only to cases which apply mutual mistake in the context of contract interpretation, recission, or avoidance. *See Consol. Eng'g Co. Inc. v. S. Steel Co.*, 699 S.W.2d 188, 192–93 (Tex. 1985) (utilizing party conduct to determine a legally ambiguous provision); *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990) (concluding mutual mistake from conduct-based evidence at the time of agreement to avoid release in settlement); *Bolle, Inc. v. Am. Greetings Corp.*, 109 S.W.3d 827 (Tex. App.—Dallas 2003, pet. denied) (utilizing post-settlement conduct to rescind a provision the parties never intended to include); *Barnes v. Forest Hills Inv., Inc.*, 11 F. Supp. 2d 699, 706 (E.D. Tex. 1998) (stating rules to resolve contract ambiguity through post-agreement conduct); *Bell v. Harrell*, 653 S.W.3d 14, 16 (Tex. App.—Amarillo 2022, pet. denied) (citing *Consol. Eng'g Co. Inc.*, 699 S.W.2d at 192–93, to interpret a legally ambiguous provision from party conduct); *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (explaining party conduct may reveal intent to be bound at the time a contract is formed in the absence of a signature).

not in his personal capacity. *See id.* Similarly, Thurman's acknowledgment that his employment agreement would remain in effect after the Power-Mesa merger and his acceptance of a cash bonus upon that acknowledgment, are likewise unavailing. *See* Dkt. 180 at 24. The employment agreement's restrictive covenants had the same language and effect then that they do now—specifically, no effect when it comes to Power *vis a vis* Thurman. Dkts. 33, 71. The same is true of Thurman's concern that his employment agreement might restrict his ability to join NHPL—that post-agreement concern has nothing to do with Thurman's pre-agreement intent that the covenants would surely apply. *Id.* at 24–25.

Even if the court considered any of that evidence to reflect mistake—which it does not—it at most reflects unilateral mistake on Mesa's behalf. And, "[u]nder Texas law, the unilaterally mistaken party alone bears responsibility for the consequences of its error." *Wentwood Woodside I, LP v. GMAC Com. Mortg. Corp.*, 419 F.3d 310, 316 (5th Cir. 2005) (citation omitted). Regardless, this supposition ignores that Power provides no evidence of an agreement preexisting Thurman's written employment agreement or evidence that a mutual mistake occurred when that agreement was drafted. *See Tech. Automation Servs. Corp.*, 673 F.3d at 408.

Without clear and convincing evidence of either element required to reform the contract, Power asks the court to create an agreement that never existed. *Cont'l Oil Co. v. Doornbos*, 402 S.W.2d 879, 883 (Tex. 1966) (explaining that reformation cannot be used to "create and bring into being an agreement not made by the parties"). The court will not.

Accordingly, the court grants summary judgment to Thurman on Power's reformation claim. Dkt. 168.

## B. Breach of Fiduciary Duty

Both parties have moved for summary judgment on Power's claim for breach of fiduciary duty. Dkts. 121, 168. Power argues the record shows Thurman breached his fiduciary duty to it when he disclosed confidential documents to NHPL and solicited Golden to join him at NHPL. Dkt. 121 at 19–22; *see Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 285 (5th Cir. 2007) ("[T]he disclosure of confidential information and solicitation of employees are among the conduct specifically proscribed by [Texas law]."). Thurman argues he was not the cause in fact of Golden's departure and that Power asserts no damages for his alleged disclosure, which, when combined, cause Power's claim to fail as a matter of law. Dkt. 168 at 27–33.

Establishing breach of fiduciary duty requires evidence of three elements: "(1) a fiduciary relationship between the plaintiff and defendant;

(2) a breach of the fiduciary duty to the plaintiff; and (3) injury to the plaintiff (or benefit to the defendant) as a result of the breach." *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 340 (Tex. App.—Dallas 2014, pet. denied). Any damage must be proximately caused by the breach. *Finger v. Ray*, 326 S.W.3d 285, 291 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

As explained below, a genuine dispute exists as to whether Thurman owed a fiduciary duty to Power. For that reason, summary judgment is not proper for Power. Furthermore, because the record demonstrates Thurman did not solicit Golden nor that Thurman's actions were the cause in fact of Golden's departure, and because Power admits it has no actual damages from Thurman's disclosure of confidential documents, Thurman is entitled to summary judgment on Power's breach-of-fiduciary-duty claim.

### 1. Fiduciary Duty

Power argues Thurman owed a formal fiduciary duty to it through his role as its vice president. Dkt. 121 at 22–24. In the alternative, Power contends this fiduciary relationship was informal but nevertheless gave rise to a duty. *Id.* at 24–25.

Both arguments fail. Because Power is an LLC and not a corporation, a fiduciary relationship does not automatically arise simply due to Thurman's position. Dkt. 121 at 22 (citing Texas cases regarding duties owed by

corporate officers); *Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 391–92 (Tex. App.—Houston [1st Dist.] 2012, vacated w.r.m.) (equating duties within the LLC to the partnership context whereby LLC members have a duty to each other but requiring a factual inquiry to determine the duty of others). Whether Thurman had a formal fiduciary relationship with Power depends entirely on the authority Power gave him. *Salas v. Total Air Servs., LLC*, 550 S.W.3d 683, 689–90 (Tex. App.—El Paso 2018, no pet.) (noting that a common-law duty between an employee and employer is like that between a principal and agent). The existence of a formal relationship and its scope turns on whether the summary-judgment record demonstrates Power authorized Thurman to act on its behalf.

The record, however, is unclear. Deposition testimony from Hiatt and Raymond Stepp, Power's vice president of operations, provides conflicting views. Hiatt described Thurman's duties as including "customer relations, assist[ance] with field management, [and] with fleet operations, *i.e.* requesting equipment, assist[ing] in preparing bids [and] with hiring subcontractors, invoicing, budgeting, chang[ing] management, scheduling . . . [and] monthly financial reporting and project closeout." Dkt. 121-6 at 50:14–51:6. Hiatt also noted that Power delegated to Thurman the

ability to "approve a subcontractor or a subcontractor invoice," but could not recall the dollar limit on that delegation. *Id.* at 51:7–14.

In contrast, Stepp stated Thurman had no authority to act. Dkt. 172-7 at 44:2–21 (approval required to submit and execute bids); 46:9–47:13 (no authority to hire, fire, or promote, to approve contract rates, to bid on jobs, make expenditures over $50,000, or enter contracts). Other than Thurman's access to confidential information, Stepp could name no reason for the existence of a duty. *Id.* at 47:18–48:15. And Texas law does not impose a duty simply based on access to confidential information. *See Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782–83 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citation omitted) (agency established through proof of "[a]uthorization to act and control of the action"). Because Power's own executives cannot agree on the level of authority given to Thurman—if any—a factual dispute exists and precludes the court from finding that a formal fiduciary relationship existed as a matter of law.

This same dispute precludes an informal-fiduciary-relationship finding as well. An informal fiduciary duty may arise between an employer and employee out of their "relationship of trust and confidence." *Navigant*, 508 F.3d at 283. But whether Power and Thurman had a "relationship of

trust and confidence" is murky at best. Power offers no additional evidence speaking to this relationship beyond that which would be expected of any employee. *Compare* Dkt. 121 at 25 (citing Thurman's acknowledgement that his performance affected Power's finances and business relationships and that his employment agreement requires he serve Power faithfully), *with Navigant*, 508 F.3d at 283 (describing employees who had an informal relationship with their employer as having "broad discretion over almost all aspects of" their employment area). Texas law indicates "a fiduciary duty will not be lightly created," and the record here does not clear that high bar. *ARA Auto. Grp. v. Cent. Garage, Inc.*, 124 F.3d 720, 723 (5th Cir. 1997) (citation omitted).

Accordingly, because Power has not shown the existence of a fiduciary relationship as a matter of law, it has not established a required element of breach of fiduciary duty. *AmeriPath*, 447 S.W.3d at 340. The court therefore denies Power's motion for summary judgment on its claim for breach of fiduciary duty. Dkt. 121.

### 2. Solicitation

Power asserts that by soliciting Golden to leave Power and join NHPL, Thurman breached his fiduciary duty to it. Dkt. 121 at 26–28. Thurman counters by arguing that the record does not show improper solicitation by

Thurman because Golden decided to leave Power for NHPL on his own. Dkt. 172 at 25–29. Thurman also argues that the breach-of-fiduciary-duty claim fails as a matter of law because Power cannot show his actions proximately caused any damages. Dkt. 168 at 29–33; *see also* Dkt. 172 at 29–33. The court addresses these arguments in turn.

### a. Breach

Under Texas law, an employee may not "solicit the departure of other employees while still working for his employer." *Navigant*, 508 F.3d at 284 (quoting *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 512 (Tex. App.— Houston [1st Dist.] 2003, no pet.)). To solicit means "more than merely to ask." *In re Athans*, 478 S.W.3d 128, 135 (Tex. App.—Houston [14th Dist.] 2015, no pet.). By its ordinary meaning, to solicit requires one "to ask or seek earnestly or pleadingly; to beg; to entreat." WEBSTER'S SECOND DICTIONARY 1727 (1934). Texas courts have recognized even stronger language:

> [T]he commonly understood meaning of the term "solicit" is "to make petition to: ENTREAT, IMPORTUNE, CONCERN; to approach with a request or a plea (as in selling or begging); to move to action: serve as an urge or incentive: INCITE; to strongly urge (as one's cause or point): insist upon; to endeavor to obtain by asking or pleading"; and "to seek eagerly or actively."

*In re Athans*, 478 S.W.3d at 135 (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 2169 (1993)). This definition places no absolute restrictions on an employee and provides that "an at-will employee may properly plan to go

into competition with his employer and may take active steps to do so while still employed and may secretly do so with other employees, without disclosing his plans to his employer." *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 763 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (cleaned up) (quoting *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 201 (Tex. 2002)).

Power's assertion relies entirely on the epilogue of Golden's departure and ignores the main tale. It specifically points to Thurman's act of drafting an offer letter for Golden based on his own and sending it to Cassidy, engaging with Cassidy regarding whether Cassidy had extended the offer, and coordinating his and Golden's resignations. Dkt. 121 at 27–28; *see* Dkts. 121-2 at 279:22–280:1, 286:6–9; 121-8; 121-28; 121-29; 121-34. But this ignores everything that occurred beforehand.

A full reading reveals Golden decided on his own to leave Power for NHPL months before Thurman's involvement, which Power does not dispute. Golden first interviewed with NHPL in 2021 and was set to join the company before his first offer fell through. Dkt. 168-1 at 20:24–24:12. Following this, Golden maintained his contacts with NHPL's parent company, Quanta. *Id.* at 97-9:18. In December 2022, Golden had become dissatisfied with Power and indicated he planned to leave. *Id.* at 55:25–56:15,

58:3–21. Golden began applying for positions at Quanta that same month. *Id.* at 62:8–64:5; Dkt. 168-2 ¶ 8. In April 2023, Golden communicated with Cassidy about open positions and his current compensation. Dkt. 168-1 at 72:1–75:6. Golden interviewed with Quanta executives in May 2023. Dkts. 168-1 at 76:8–13; 168-2 ¶ 8. As early as May 2023, Cassidy was ready to hire Golden, but it didn't happen that quickly; meanwhile, Golden continued to express his readiness to join Quanta or one of its subsidiaries and ceased looking elsewhere. Dkts. 168-1 at 75:19–76:6, 81:7–13; 168-2 ¶ 11. Cassidy encouraged Golden to continue reaching out. Dkt. 168-2 ¶¶ 9–10. In early November 2023, Cassidy made the decision to hire Golden and informed him he would receive an offer "toward the end of the year," so Cassidy could coordinate Golden and Thurman's hiring. Dkts. 168-1 at 89:14–91:15; 168-2 ¶¶ 12–13, 22–23. At this point, Cassidy had verbally finalized with Golden most of the details regarding his position and compensation. Dkt. 172-1 at 295:15–17, 299:6–8. Only after all this did Thurman engage in the conduct on which Power relies for its claim. Dkt. 168-2 ¶¶ 17–18.

This is not solicitation. *See Johnson*, 73 S.W.3d at 201 ("[A]t-will employees should be allowed to change employers freely and competition should be encouraged." (cleaned up)). The record does not show that Thurman acted as some "corporate pied piper" who "lure[d] all of his

employer's personnel away, thus destroying [Power's] business." *Abetter Trucking Co.*, 113 S.W.3d at 512–13 (citation omitted) (describing acts rising to level of solicitation). Thurman also did not arrange interviews for Golden. *See Navigant*, 508 F.3d at 287–88 (introducing employees to competitor and flying employee to interview "rose to the level of solicitation"). And although Thurman drafted an offer letter for Golden based on his own, the record does not show that he negotiated anything on Golden's behalf. *See Providence Title Co. v. Truly Title, Inc.*, No. 4:21-CV-147-SDJ, 2024 WL 3927229, at *11 (E.D. Tex. Aug. 22, 2024) (breaching by negotiating salary and days off for spouse with the new employer while both remained employed).

The facts here are more analogous to the *Abetter Trucking* and *Eurecat* cases, where no solicitation occurred. In *Abetter Trucking*, employees followed another employee to his new company because it "offered better working conditions," not because of solicitation. 113 S.W.3d at 513. In *Eurecat*, two friends who were unsure of their future with their current employer decided to work together to start a competing business. *Eurecat US, Inc. v. Marklund*, 527 S.W.3d 367, 382 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see* Dkts. 172-1 at 62:8–10 (knowing Thurman for fourteen years, attending same church, considering families close); 172–2 at 203:1–8

(Thurman acknowledging he was friends with Golden before they became coworkers). Texas law does not prohibit Thurman's conduct. This alone is grounds to grant summary judgment for Thurman on the solicitation claim even though he is the nonmovant on the breach element. *See* Dkts. 121, 172.

### b. Causation

The record also supports a finding of no proximate cause, on which Thurman has moved for summary judgment. Dkt. 168. Proximate cause requires two elements: foreseeability and cause in fact. *Navigant*, 508 F.3d at 289. Power has presented no evidence to create a dispute that Thurman's actions were not a "substantial factor in bringing about [Power's] injury and without which no harm would have occurred," and, therefore, were not the cause in fact of Power's alleged injuries. *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980).

The record shows that Golden made up his mind to join one of Quanta's companies independently of Thurman. *E.g.*, Dkt. 168-1 at 105:10–14 ("I think ultimately the final decision for me to leave Power was made in about March of 2023. I think at that point—at that point, I had made the final decision that staying at Power wasn't for me."). Golden's offer contained terms discussed between him and Cassidy alone, before Thurman submitted his draft offer letter to Cassidy. *Id.* at 93:6–24. Therefore, Thurman's late

involvement is not a substantial factor nor the but-for cause of Golden's departure. *See Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 929 (Tex. 2015) (equating substantial factor with but-for cause to show cause-in-fact); *Centurion Logistics LLC v. Brenner*, No. 05-23-00578-CV, 2024 WL 5244618, *12 (Tex. App.—Dallas Dec. 30, 2024, pet. denied) (finding no causation for breach of fiduciary duty because third party had made up its own mind before alleged conduct).

Power does not dispute Golden's testimony and instead relies entirely on actions taken after Golden decided to leave Power for NHPL. Dkt. 180 at 32–34. This is not enough to create a genuine dispute as to Golden's departure. Moreover, Power ignores Texas law that permits employees to consider departing their employer together, even if that departure has "a clear intent to benefit" a competitor and not the employer. *Id.* at 32; *see Johnson*, 73 S.W.3d at 201 ("[A]t-will employees should be allowed to change employers freely and competition should be encouraged." (cleaned up)). Instead, Power relies on an out-of-district slip opinion where a district court dismissed an argument that "a party could only be liable for causing an individual to leave his or her current employer if that individual had not already thought about leaving that employer" as "overly broad." Dkt. 180 at 33 (citing *Caliber Home Loans, Inc. v. Cove*, No. 3:22-CV-02298-M, 2025

WL 71983, at *7 (N.D. Tex. Jan. 10, 2025) (slip op.)). But the record here is different: Golden was not "[thinking] about leaving that employer"; he had already decided to leave Power, as the record shows numerous times. *Id.* And, as this court finds above, Thurman was not responsible for "causing an individual to leave his or her current employer" because Golden instigated his own departure following his disillusionment with Power. *Id.*

Accordingly, without cause in fact, Power cannot establish proximate cause. *Navigant*, 508 F.3d at 289. Without proximate cause, Power's claim for breach of fiduciary duty based on solicitation fails as a matter of law. *See Finger*, 326 S.W.3d at 291. The court grants summary judgment to Thurman on Power's claim for breach of fiduciary duty as to solicitation. Dkt. 168.

### 3. Disclosure

Power argues that Thurman breached his fiduciary duty to it by disclosing confidential documents to NHPL. Dkt. 121 at 28–31. To be a breach, that disclosure must be of "confidential or proprietary information acquired during the [employment] relationship [and used] in a manner adverse to [Power.]" *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd). Power alleges Thurman disclosed four documents: "(1) Nonqualified Stock Option Agreement; (2) Cash Bonus and Release Letter Agreement; (3) his

Employment Agreement; and (4) a Winding Down Memorandum." Dkt. 121 at 29; *see* 121-4, 121-13–17, 121-30 at 97:24–98:15.

Thurman correctly argues this claim should fail as a matter of law because Power cannot establish actual damages. Dkt. 168 at 28–29; *see Finger*, 326 S.W.3d at 291 (requiring actual damages). Power identifies no economic damages. Dkt. 168-5 at 13 (seeking damages only for solicitation). Stepp conceded this. Dkt. 168-6 at 159:24–160:2 (answering "I don't believe that's the case, no," when asked whether Power sought damages associated with the disclosure). Without damages, the claim fails as a matter of law.

Power's attempt to sidestep this fact misses the mark. *See* Dkt. 180 at 27–31. First, Power contends it asserts a "unified breach" sustainable alone by damages arising from its solicitation allegation. *Id.* at 28. But because the court has granted Thurman summary judgment on the solicitation claim, Power cannot rely on those damages. And without allegations of actual damages caused by the disclosure of confidential documents, Power cannot establish the damages prong for its claim as a matter of law. *AmeriPath*, 447 S.W.3d at 340.

Second, Power cannot now assert a claim for the equitable remedy of disgorgement. *See* Dkt. 180 at 29–31 ("Power has not and need not allege any economic damages resulting from the disclosure of confidential information

to recover in equity. Rather, Power intends to seek from the [c]ourt disgorgement of the benefits Thurman gained because of his disclosure of confidential information.") Although Texas courts do not require causation and actual damages when a plaintiff seeks the equitable remedy of disgorgement based on the defendant's "secret gain or benefit," that equitable relief must be prayed for. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220–21 (Tex. 2017); *see* Fed. R. Civ. P. 8(a) (Power's complaint "must contain a demand for the relief sought"); *Lee v. Lee*, 47 S.W.3d 767, 781 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (requiring pleading equitable remedy of forfeiture under Texas law for breach of fiduciary duty). This question turns, then, on whether Power prayed for disgorgement.

Power did not. Although Power pleads that Thurman's breach "resulted in a benefit to Thurman," it limited the relief sought to "actual and exemplary damages from Thurman for his conduct." Dkt. 37 ¶ 153. Power also alleges no "secret gain or benefit" received by Thurman. *Id.* Indeed, it alleges only "extreme irreparable harm" to itself were a competitor to "gain unauthorized access to or knowledge of" confidential information in Thurman's possession. *Id.* ¶ 44. Power also alleges it "has been and will be damaged and will be imminently and irreparably harmed" due to Thurman's

disclosures. *Id.* ¶ 132. In general, Power pleaded that by violating his duty of loyalty, "Thurman has caused Power Contracting further damages that it seeks to redress." *Id.* ¶ 23. Even if the court applied a liberal reading, other than Power's conclusory statement of a benefit conferred on Thurman, nothing in its pleadings could be construed as seeking disgorgement. And without having prayed for disgorgement, Power cannot now demand it.[2] *See, e.g.*, *Oracle Elevator Holdco, Inc. v. Exodus Sols., LLC*, No. 4:19-CV-4658, 2021 WL 4077581, at *12 (S.D. Tex. Sept. 8, 2021) (applying Texas law to require proof of actual damages and causation when disgorgement not pleaded).

Accordingly, because Power admits it seeks no actual damages on the disclosure portion of its claim and cannot unify damages under the solicitation portion, its claim fails as a matter of law. Consequently, the court grants Thurman's motion for summary judgment on Power's claim for breach of fiduciary duty. Dkt. 168

---

[2] Even if Power could seek disgorgement, the only evidence it provides to support its claim of a "secret gain or benefit" is Thurman's salary, sign-on bonus, and a stock grant from NHPL. Dkt. 180 at 29 (citing Dkt. 121-25). But without evidence Thurman's compensation package was causally tied to an alleged breach and was not compensation for work performed for NHPL, Power's argument fails. *See Swinnea v. ERI Consulting Eng'rs, Inc.*, 236 S.W.3d 825, 841 (Tex. App.—Tyler 2007), *rev'd on other grounds*, 318 S.W.3d 867 (Tex. 2010) (requiring gains to be "ill-gotten" for disgorgement).

## C. Indemnity

Power has moved for summary judgment on Thurman's indemnity counterclaims in their entirety. Dkt. 170 at 6–7. Thurman has moved for partial summary judgment "only as to Power's now-withdrawn performance-related allegations" and only under Power's operating agreement. Dkt. 166 at 8, 30–33. For the reasons below, the court denies Power's motion as to indemnity under the operating agreement for breach of fiduciary duty but grants as to reformation, grants summary judgment *sua sponte* to Thurman for indemnity under the operating agreement as to breach of fiduciary duty, and dismisses as moot Thurman's counterclaim for indemnity under his employment agreement. Additionally, because it is related, the court dismisses as moot Thurman's counterclaim for breach of the operating agreement.

Fed. R. Civ. P. 56(f) requires "notice and reasonable time to respond" when the court opts to "grant summary judgment for a nonmovant[.]" Accordingly, Power has ten days from this order to submit additional evidence not already before the court on the issue of indemnity under the operating agreement as to breach of fiduciary duty. The court will not issue final judgment until after consideration of that evidence, if any is provided.

Thurman takes two roads to indemnity: his employment agreement and Power's operating agreement. Dkt. 100 ¶¶ 59–70. Power's operating agreement provides for indemnity through the same sections the court analyzed to determine Thurman's entitlement to advancement. Dkt. 166-2 § 2.7; *see* Dkt. 199 at 8–19. The operating agreement is governed by North Carolina law. *Id.* § 5.1. Thurman's employment agreement provides the other avenue and is governed by Texas law. Dkt. 166-1 §§ 8.1, .5.

Texas and North Carolina courts treat indemnity provisions identically. In both states, courts "construe indemnity agreements under normal rules of contract construction . . . to ascertain and give effect to the parties' intent as expressed in the contract." *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000); *accord Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 658 S.E.2d 918, 921 (N.C. 2008). When an indemnity agreement is "plain and unambiguous on its face," the court will construe it "as a matter of law." *Schenkel & Shultz*, 658 S.E.2d at 921; *Gulf Ins. Co.*, 22 S.W.3d at 423. Both Thurman's employment agreement and Power's operating agreement are "plain and unambiguous" on their face and the court will therefore construe them as a matter of law.

Regarding the operating agreement, the court performed the bulk of this analysis in addressing Thurman's advancement counterclaim and need

not rehash it here. Dkt. 199 at 8–19. In summary, the court found Thurman entitled to advancement because (1) Thurman is defending against a suit "to which indemnification may be provided" under Power's operating agreement, (2) the suit arises "by reason of the fact" Thurman served as Power's vice president, (3) the operating agreement requires no ultimate showing of good faith at the advancement stage, (4) and the operating agreement's limitations provision does not apply to Thurman's counterclaims or Power's claim for breach of fiduciary duty (it does preclude advancement for defending Power's reformation claim). *Id.* The court declined to prematurely resolve indemnity and focused only on Thurman's potential eligibility. *Id.* at 7, 19. Having now resolved the breach-of-fiduciary-duty claim, the court can now answer the indemnity question.

Analysis begins with section 2.7(b). Dkt. 166-2 § 2.7(b). Power "shall indemnify" Thurman if he "acted in good faith and in a manner [he] reasonably believed to be in or not opposed to the best interests" of Power. *Id.* This section precludes indemnity only if Thurman has "been adjudged liable to [Power]," unless the court determines otherwise. *Id.* Section 2.7(b), however, is also subject to section 2.7(c).

Section 2.7(c) contains two relevant sentences. First, it excludes any requirement that Power authorize indemnity when indemnity is "ordered by

a court." Dkt. 166-2 § 2.7(c). So, Power has no say in this determination.[3] And because the determination of "good faith" contained in section 2.7(b) is conducted by Power according to section 2.7(c), "good faith" plays no part here. Second, section 2.7(c) provides that when a person such as Thurman

> has been successful on the merits or otherwise in defense of any action, suit or proceeding set forth in . . . Section 2.7(b) or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith, without the necessity of authorization in the specific case.

*Id.* Because the court found in Thurman's favor on the indemnifiable claims, indemnity is automatically triggered. And because Thurman has not been "adjudged liable to [Power]," indemnity is not precluded. *Id.* § 2.7(b). Therefore, Power "shall indemnify" Thurman for expenses incurred defending against Power's claim for breach of fiduciary duty.

Moreover, the operating agreement requires Power to indemnify Thurman against expenses incurred in prosecuting his indemnity counterclaim. Section 2.7(e) provides that upon a finding by a court that Thurman is entitled to indemnification under section 2.7(b), he "shall also

---

[3] "The coin don't have no say." NO COUNTRY FOR OLD MEN (Paramount Vantage 2007).

be entitled to be paid the expense of prosecuting" such claims. Dkt. 166-2 § 2.7(e).

Thurman concedes that indemnity under the operating agreement renders indemnity under the employment agreement moot. Dkt. 174 at 7–8. The court agrees. The employment agreement indemnifies "for losses or damages" and limits those "[t]o the extent provided in the" operating agreement. Dkt. 166-1 § 8.1. Thurman has not incurred any damages. And although losses have not been defined in the employment agreement, the only possible loss for which Thurman might require indemnity would be his legal expenses, which are covered by the operating agreement. This, therefore, moots Thurman's counterclaim for indemnity under the employment agreement.

Additionally, the employment agreement in no way limits the indemnity the operating agreement provides. Although the employment agreement limits indemnity to "all causes of action arising from [Thurman's] performance of duties for the benefit of [Power]," because that indemnity pertains to "losses and damages" and not to "expenses" indemnified by the operating agreement, the limitation does not apply. Dkts. 166-1 § 8.1; 166-2 § 2.7(b).

Accordingly, the court grants partial summary judgment to Thurman on his counterclaim for indemnity under the operating agreement, but only as to expenses incurred defending against the claim for breach of fiduciary duty and in asserting this counterclaim. Dkts. 100 ¶¶ 65–70; 166. The court grants partial summary judgment to Power on Thurman's counterclaim for indemnity under the operating agreement, but only as to expenses incurred defending against the claim for reformation.[4] Dkt. 170 at 35. The court also grants partial summary judgment to Thurman on his counterclaim for declaratory relief in accordance with the above and denies Power's motion for summary judgment on its supplemental claim for declaratory relief in full. Dkts. 100 ¶¶ 77–81; 160 at 21–23; 170 at 6.

Thurman's counterclaims for indemnity under the employment agreement and for breach of the employment agreement are dismissed as moot. Dkt. 100 ¶¶ 49–53, 59–64.

\* \* \*

For the foregoing reasons, the court grants summary judgment for:

- Thurman on Power's claim for reformation, Dkt. 168;

- Thurman on Power's claim for breach of fiduciary duty, Dkt. 168;

- Thurman on his counterclaim for indemnity under Power's

---

[4] The court found previously that section 2.7(k) precluded advancement and indemnity for Power's reformation claim. Dkt. 199 at 17–19.

operating agreement as to breach of fiduciary duty and as to costs for asserting this counterclaim, *sua sponte*, Dkt. 100 ¶¶ 65–70;

- Power on Thurman's counterclaim for indemnity under the operating agreement as to reformation, Dkt. 170; and

- Thurman on his counterclaim for declaratory relief related to indemnity as described above, Dkt. 100 ¶¶ 77–81.

The court denies summary judgment for:

- Power on its claim for breach of fiduciary duty, Dkt. 121;

- Power on Thurman's counterclaim for indemnity under the operating agreement as to breach of fiduciary duty, Dkt. 170; and

- Power's supplemental claim for declaratory relief, Dkt. 170.

The court denies as moot:

- Thurman's counterclaim for indemnity under the employment agreement, Dkt. 100 ¶¶ 59–64; and

- Thurman's counterclaim for breach of the employment agreement, Dkt. 100 ¶¶ 49–53.

One claim remains:

- Thurman's counterclaim for breach of Power's operating agreement as to indemnity, Dkt. 100 ¶¶ 54–58.[5]

As explained *supra*, the court will enter a final judgment ten days from this

---

[5] The court believes there is no genuine dispute of material fact as to three elements of this claim: the operating agreement is valid, Thurman performed, and Power breached. *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet. denied). But because the court has no evidence before it as to whether that breach caused Thurman damages, it cannot grant summary judgment for Thurman on this claim. *Id.*

order, pending a proffer of additional evidence by Power within the scope instructed by the court.

Signed on Galveston Island this 20th day of August, 2025.

_____

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE